STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

21-741


LITEL EXPLORATIONS, LLC

VERSUS

AEGIS DEVELOPMENT COMPANY, LLC, ET AL.


**********

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. C-823-17
HONORABLE CRAIG STEVE GUNNELL, DISTRICT JUDGE

**********

**CANDYCE G. PERRET**
**JUDGE**

**********

Court composed of Shannon J. Gremillion, Candyce G. Perret, and Sharon Darville Wilson, Judges.


**AFFIRMED.**

**Patrick B. McIntire**
**Oats & Marino**
**100 E. Vermilion Street, Suite 400**
**Lafayette, LA   70501**
**(337) 233-1100**
**COUNSEL FOR INTERVENORS/APPELLANTS:**
    **Louisiana Office of Conservation**
    **Louisiana Department of Natural Resource**

**F. Jonathan Rice**
**Rice Law Firm**
**P.O. Box 94275**
**Baton Rouge, LA   70804**
**(225) 342-5500**
**COUNSEL FOR INTERVENORS/APPELLANTS:**
    **Louisiana Office of Conservation**
    **Louisiana Department of Natural Resource**

**Brian W. Capell**
**Brittan J. Bush**
**Liskow & Lewis**
**Post Office Box 52008**
**Lafayette, LA   70505**
**(337) 232-7424**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Gary Production Company**

**Paul J. Hebert**
**Valerie V. Guidry**
**Mark D. Sikes**
**David K. McCrory**
**Ryan P. McCalister**
**Ottinger Hebert, LLC**
**Post Office Drawer 52606**
**Lafayette, LA   70505-2606**
**(337) 232-2606**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Pioneer Natural Resources USA, Inc.**

**Douglas C. Longman, Jr.**
**Jones Walker, LLP**
**600 Jefferson Street, Suite 1600**
**Lafayette, LA   70501**
**(337) 593-7600**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Apache Corporation of Delaware**

**F. Gibbons Addison**
**Boyd A. Bryan**
**W. Thomas McCall, Jr.**
**Jones Walker, LLP**
**445 N. Boulevard, 8th Floor**
**Baton Rouge, LA   70802**
**(225) 248-2000**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
        **Apache Corporation of Delaware**
        **CanadianOxy Offshore Production Company**
        **Oxy USA, Inc.**

**Christoffer C. Friend**
**Meghan E. Smith**
**Jones Walker, LLP**
**201 St. Charles Avenue, Suite 5100**
**New Orleans, LA   70170**
**(504) 582-8000**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
        **Oxy USA, Inc.**
        **CanadianOxy Offshore Production Company**

**Thomas M. Melsheimer**
**Winston & Strawn, LLP**
**2121 N. Pearl Street, Suite 900**
**Dallas, TX    75201**
**(214) 453-6401**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
        **Pioneer Natural Resources USA, Inc.**
        **Pioneer Natural Resources, Inc.**

**A. Shelby Easterly, III**
**Easterly Law Office**
**9538 Hwy 16**
**Denham Springs, LA   70706**
**(225) 664-0001**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
        **Terry Calongne, LLC**
        **Penn Enterprises, LLC**
        **CMP Family, LLC**

**Daniel C. Hughes**
**126 Heymann Boulevard**
**Lafayette, LA   70503**
**(337) 237-6566**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
        **Henry Production Company**
        **Petro Quest Exploration, Inc.**

**Bruce R. Hoefer, Jr.**
**D. Russell Holwadel**
**Heather E. Reznik**
**Adams, Hoefer, Holwadel, LLC**
**400 Poydras Street, Suite 2450**
**New Orleans, LA 70130**
**(504) 581-2606**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Denbury Onshore, LLC**

**Michael L. Schilling, Jr.**
**Post Office Box 4907**
**Lafayette, LA 70502**
**(337) 739-0777**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **MTBB Acquisitions, LLC**

**Alan J. Berteau**
**Matthew B. Smith**
**Kean Miller, LLP**
**Post Office Box 3513**
**Baton Rouge, LA 70821**
**(225) 387-0999**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **BP America Production Company**

**John H. Carmouche**
**Talbot, Carmouche, & Marcello**
**17405 Perkins Road**
**Baton Rouge, LA 70810**
**(225) 400-9991**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Litel Explorations, LLC**

**David P. Bruchhaus**
**Mudd, Bruchhaus & Keating**
**422 E. College Street, Suite B**
**Lake Charles, LA 70605**
**(337) 562-2327**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Litel Explorations, LLC**

**Celeste D. Elliott**
**Lugenbuhl, Wheaton, Peck, and Rankin**
**601 Poydras Street, Suite 2775**
**New Orleans, LA 70130-6027**
**(504) 568-1990**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **United Specialty Insurance Company**

**Phillip E. Foco**
**Bienvenu, Bonnecoze, Foco, Viator, & Holinga, APLLC**
**4210 Bluebonnet Boulevard**
**Baton Rouge, LA   70809**
**(225) 388-5600**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
   **Exxon Mobile Corporation**
   **ExxonMobil Oil Corporation**
   **Mobil Oil Exploration & Production Southeast, Inc.**

**Phillip W. DeVilbiss**
**Scofield, Gerard, & Pohorelsky**
**901 Lakeshore Drive, Suite 900**
**Lake Charles, LA   70602-3028**
**(337) 433-9436**
**COUNSEL FOR DEFENDANT/APPELLEE:**
   **Manti Resources, Inc.**

**Darrin L. Forte**
**Garrison, Yount, Forte & Mulcahy**
**909 Poydras Street, Suite 1800**
**New Orleans, LA   70112**
**(504) 527-0680**
**COUNSEL FOR DEFENDANT/APPELLEE:**
   **Sandhill Production, Inc.**

**Jackson D. Logan, III**
**Attorney at Law**
**511 Queensberry Drive**
**Lafayette, LA   70508**
**(214) 605-0494**
**COUNSEL FOR DEFENDANT/APPELLEE:**
   **Sandhill Production, Inc.**

**David N. Luder**
**Barrasso, Usdin, Kupperman**
**909 Poydras Street, Suite 2350**
**New Orleans, LA   70112**
**(504) 589-9700**
**COUNSEL FOR DEFENDANT/APPELLEE:**
   **Hanley Petroleum LLC**

**Anderson Exploration Company, Inc.**
**c/o Charles R. Anderson**
**1632 Hodges Street**
**Lake Charles, LA   70601**
**COUNSEL FOR DEFENDANT/APPELLEE:**
   **Anderson Exploration Company, Inc.**

**M J Kelly, Company**
**In Proper Person**
**1945 E 70th Sreet, Suite C**
**Shreveport, LA   71105**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **M J Kelly Co**

**Specter Exploration, Inc.**
**c/o Stephen M. Jenkins**
**5800 One Perkins Place, Suite 9A**
**Baton Rouge, LA   70808**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Specter Exploration, Inc.**

**PERRET, Judge.**

In this oilfield environmental contamination suit, the Office of Conservation of the Louisiana Department of Natural Resources, appearing through the Commissioner of Conservation, Richard Ieyoub ("Office of Conservation"), appeals a trial court judgment granting defendants', Pioneer Natural Resources, Inc. ("Pioneer") and Gary Production Company ("Gary"), motions for partial summary judgment. For the following reasons, we affirm.

## FACTS AND PROCURAL HISTORY

On September 10, 2019, the Office of Conservation filed a petition for intervention in this legacy case alleging that it has a right to intervene under La.R.S. 30:29 "[s]ince this suit involves allegations of environmental damage and/or injury to property located in the State of Louisiana as a result of activities associated with oilfield or exploration and production sites[.]" As an exhibit to the petition for intervention, the Office of Conservation attached its Declaration of Emergency that was signed on September 5, 2019. Specifically, the Declaration of Emergency states, in pertinent part:

> **Pursuant to the authority** granted to the Commissioner of Conservation under [La.R.S.] 30:1 et seq., particularly [La.R.S.] 30:6.1:
>
> **It is hereby declared** that based on an inspection performed on August 12, 2019 by an Agent of this office, that the GA Lyon # 001 -- SN213688 is leaking gas and oil into the environment. The operator of record, Sandhill Production Inc. (OC S433), has made several unsuccessful attempts to stop the leak in order that the well could be plugged and abandoned. Further, Sandhill Production Inc. is now financially incapable of continuing remedial activities and therefore is no longer a responsible party. The subject well is located in Section 30, Township 11 South, Range 04 West, South Thornhill Field, Jefferson Davis Parish, Louisiana.

**It is further declared** that this is an emergency that requires immediate action by the Office Conservation to protect the environment and the health, safety and welfare of the general public.

**It is further declared** that the Office of Conservation be allowed to conduct site restoration activities at the site including, but not limited to, plugging and abandonment of the subject well and removal of any surface contamination resulting from the discharge.

Also attached to the petition for intervention were exhibits evidencing that: (1) the Office of Conservation issued a Compliance Order (No. E-I&E18-1147) on November 21, 2018, to Sandhill Production, Inc. ("Sandhill"), the last operator of the GA Lyon Well No. 001 (SN 213688), to remedy the leakage of the surface casing resulting in the discharge of fluids; and (2) Sandhill responded on August 21, 2019, stating that it "is the current operator of the G.A. Lyon Well #1 and has labored to not only stop the leak, but also properly plug and abandon the well," but that it "has been unsuccessful in this venture and has exhausted its financial and operational capabilities responding to this situation . . . [and] has no other choice than to abandon the G.A. Lyon Well #1 and seek orphan status as operator with the State of Louisiana."

The petition for intervention was granted on September 12, 2019. Thereafter, on December 2, 2019, the Office of Conservation filed a first supplemental and amending petition for intervention to add defendant Pioneer alleging that it "and/or its predecessors, Mesa Operating Company and Mesa Operating Limited Partnership, . . . operated the G.A. Lyon #1 Well (SN 213688) and the G.A. Lyon Well #1-D (SN 215064) located on the plaintiff['s,] Litel Exploration, LLC[,] property."[1]

---

[1] Plaintiff, Litel Exploration, LLC, incorrectly named Pioneer in the Second Supplemental and Amending Petition for Damages.

On June 21, 2021, defendants Pioneer and Gary filed motions for partial summary judgment arguing that, pursuant to La.R.S. 30:93, the Office of Conservation "is only permitted to seek recovery of costs incurred pursuant to an emergency declaration under [La.R.S. 30:6.1] from the last operator of record of the Well, including its working interest owners." Pioneer and Gary allege that because neither they nor their predecessors were the last operator of record of the GA Lyon No. 1 Well (SN 213688) and the dual completion GA Lyon No. 1-D Well (SN 215064), they are not liable for the expenses and costs incurred by the Office of Conservation in responding to the emergency declared on September 5, 2019. In support of its motion for partial summary judgment, Pioneer attached the following exhibits: (1) the Office of Conservation's petition for intervention; (2) the June 14, 2021 affidavit of Keith Dronet; (3) the October 24, 2019 deposition of Matt Simon; (4) the Office of Conservation's motion and incorporated memorandum filed on October 30, 2019, requesting reimbursement of all costs and expenses incurred securing the GA Lyon No. 1 Well (SN 213688); and (5) the May 20, 2021 deposition of Gary Ross. In Gary's motion for partial summary judgment, it "adopts and incorporates Pioneer's Motion and Memorandum in Support" and "fully incorporates the evidence presented by Pioneer in support of Pioneer's Motion to the extent applicable to Gary's Motion."

In Pioneer's memorandum in support of the motion for partial summary judgment, it alleges that Mesa Operating Limited Partnership ("Mesa"), its predecessor, was the operator of the GA Lyon No. 1 Well and the dual completion GA Lyon No. 1-D Well (collectively the "Lyon Well") from August 16, 1991, until May 1994, when Aegis Energy, Inc. became the operator of the Lyon Well. Pioneer alleges that since the termination of its lease in 1995, neither it "nor its

predecessors ever owned a working interest in any other mineral lease covering the Lyon Well." Pioneer alleges that Sandhill became the owner of record for the Lyon Well on March 1, 2015, pursuant to an amended permit to drill issued by the Office of Conservation. Pioneer alleges the Lyon Well began to leak gas and liquids from the surface equipment during Sandhill's operations in 2018 or 2019. Pioneer argues that only one company, Elm Springs, Inc., responded to the Office of Conservation's "Emergency Bid Proposal EMER202-003" and that the Office of Conservation contracted with it to resolve the declared emergency. At that time, Pioneer argues the Office of Conservation limited its recovery to that which is provided by La.R.S. 30:93A(4), which states "For a response to any emergency as provided in R.S. 30:6.1, recovery of costs shall be against the responsible party." Thus, Pioneer alleges that because "[i]t is undisputed that [it] was neither the last operator of record, nor was it a working interest owner with the last operator of record," the Office of Conservation is not permitted to recover the costs incurred pursuant to the declared emergency.

On July 8, 2021, the Office of Conservation filed an opposition to the motions for partial summary judgment arguing that "Pioneer and Gary overlook the fact that the GA Lyon No. 1 Well was orphaned at the time of the expenditures[,]" and that "the portion of R.S. 30:93 that applies to this case is not just subsection A(4), as Pioneer and Gary argue, but also subsections A(1) and A(3), which specifically deal with orphaned well sites where no trust fund has been established to handle plugging and abandoning the well." In support of its opposition, the Office of Conservation attached the affidavit of its employer, Brent Campbell, who testified that the Lyon Well was orphaned, and that "[n]o site-

4

specific trust fund has ever been created for the Lyon Well by any former operator."

In the Office of Conservation's memorandum in opposition, it agrees with defendants that "[f]or a non-orphaned well, where funds are spent in response to an emergency, recovery is against the 'responsible party' as set forth in subsection A(4); that is, against the operator of record[,]" but that "for an orphaned well, whether the funds are spent in response to an emergency or not, recovery is against prior operators and working interest owners in inverse chronological order as set forth in subsections A(1) and A(3)." Accordingly, the Office of Conservation argues the interpretation proposed by defendants, that there can be no recovery against prior operators and working interest owners once funds are spent in response to an emergency, "is not consistent with the general scheme of the statute, which is to shift the financial responsibility for dealing with an orphaned well away from the State and on to those who owned and operated the well."

Both Pioneer and Gary filed reply memorandums in response to the Office of Conservation's opposition alleging that the wellsite was not orphaned (1) when the emergency declaration was made, (2) when the emergency bid package was sent to only three contractors, (3) when the sole bid was submitted, and (4) at the time the work began. Thus, Pioneer and Gary argue that the work "was done pursuant to the original emergency bid proposal" and that the "bidding procedure never met the requirements of an orphan restoration project."

A hearing on the motions for partial summary judgment was held on July 16, 2021. Following arguments, the trial judge provided oral reasons for his ruling:

> And, like I said, this one has been going over in my head a lot of times, okay. But I have to go - - I have to read the statute. I have to read the statute as written. And it's a poorly written statute. It says

5

if it's an emergency, you shall go against the responsible party, and it defines the responsible party, okay. It does not give us any leeway, okay. So I'm going to grant the motion for partial summary judgment.

Thereafter, on August 9, 2021, the trial judge rendered a judgment that granted the motions for partial summary judgment and dismissed, with prejudice, all claims against Pioneer and Gary for costs and expenses incurred by the Office of Conservation in its efforts to control or plug the Lyon Well. The trial judge further ordered that the partial summary judgment be designated as final and appealable under La.Code Civ.P. art. 1915B(1).[2]

The Office of Conservation now appeals this judgment, alleging the following sole assignment of error: "The Trial Court erred in granting the motions for partial summary judgment and dismissing the claims of the Office of Conservation and Commissioner Ieyoub for recovery of costs expended to control the Lyon well."

## STANDARD OF REVIEW

Questions of law, such as the proper interpretation of a statute, are reviewed by appellate courts under the de novo standard of review, and the appellate court is not required to give deference to the lower court in interpreting a statute. *Domingue v. Bodin*, 08-62 (La.App. 3 Cir. 11/5/08), 996 So.2d 654. Our review of questions of law is simply to determine whether the trial court was legally correct or legally incorrect. *Id.* If the trial court's decision is based on an erroneous

---

[2] La.Code Civ.P. art. 1915B(1) provides as follows:

> When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories against a party, whether in an original demand, reconventional demand, cross-claim, third-party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.

6

interpretation or application of the law, rather than a valid exercise of discretion, that decision is not entitled to deference by the reviewing court. *Id.*

Further, an appellate court reviews a trial court's granting of a motion for summary judgment de novo. *Duncan v. U.S.A.A. Ins. Co.*, 06-363 (La. 11/29/06), 950 So.2d 544. Under this standard of review, the appellate court uses the same criteria as the trial court in determining if summary judgment is appropriate: whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. *Id.*

## APPLICABLE LEGAL PRINCIPLES

In 1993, the Louisiana Legislature enacted the "Louisiana Oilfield Site Restoration Law," finding that "[a] present and future benefit to the environment, public health, safety, and welfare would be to clean up, close, and restore oilfield sites." La.R.S. 30:81A(1). In the public interest and within the police power of the state, the legislature established "an oilfield site restoration commission and an oilfield site restoration fund to provide for the proper and timely cleanup, closure, and restoration of oilfield sites, to be administered by the assistant secretary of the office of conservation within the Department of Natural Resources." La.R.S. 30:81(B).

In 1999, the Louisiana Legislature provided a separate method for the Department of Natural Resources to conduct operations at oilfield sites in emergency situations "which [are] of such magnitude as to require immediate action to prevent substantial or irreparable damage to the environment or a serious threat to life or safety based on recognized criteria, standards or industry practices[.]" La.R.S. 30:6.1A. Louisiana Revised Statutes 30:6.1, titled "Declaration of emergency," further provides:

B. Upon declaration of an emergency, the commissioner shall notify the operator of record. Notification shall be made by telephone at the emergency number on file in the commissioner's office, telegraph, facsimile, or personal appearance. If the operator cannot be contacted for notification within twenty-four hours or if the operator of record fails to begin abatement procedures within twenty-four hours after notice by the commissioner, the commissioner shall begin the emergency procedures provided for in this Section. Refusal on the part of the operator to begin abatement procedures after notification by the commissioner shall constitute a failure or refusal to comply with the provisions of this Title and rules, regulations, and orders issued thereunder.

C. When an emergency situation is declared, the commissioner is authorized to undertake the containment and abatement of the pollution source and pollutants and may retain personnel or contract for these purposes with persons who shall operate under his direction. All contracts let by the commissioner to respond to a declared emergency shall be exempt from the provisions of Chapter 10 of Title 38 of the Louisiana Revised Statutes of 1950 and the Louisiana Procurement Code. However, the commissioner may employ an informal bidding procedure by which bids are solicited from at least three bidders. He may order the operator of record or owner to undertake the containment, abatement, or cleanup of such pollution source and pollutants. Failure to comply with his order shall be a violation of this Title and shall be punishable as provided in this Title. The commissioner shall submit an annual report to the House Committee on Natural Resources and Environment and Senate Committee on Natural Resources listing the number and type of emergencies declared within the previous year.

D. (1) The commissioner may issue permits, variances, or other orders as necessary to respond to the emergency, which shall be effective immediately upon issuance, and any request for hearing, appeal, or request for review shall not suspend the implementation of the action ordered. The term of any such emergency action shall be limited to the time necessary to address the emergency conditions.

(2) An action for injunctive relief against any order issued pursuant to the declaration of an emergency shall be brought in the Nineteenth Judicial District Court for the Parish of East Baton Rouge. Exhaustion of administrative remedies is not a prerequisite to such action.

(3) The party bringing an action under this Subsection has the burden of demonstrating, by clear and convincing evidence, that granting injunctive relief shall not endanger or cause damage to the public health or the environment. If such injunctive relief is granted, the party bringing such an action shall provide an adequate bond.

E. In addition, when an emergency is declared, emergency response personnel or contractors shall be authorized to undertake necessary actions to contain and abate the pollution source and pollutants.

F. In responding to an emergency, the commissioner may utilize any funds allowable under federal law or state law or any funds which have been appropriated for such purposes, including but not limited to the Oilfield Site Restoration Fund pursuant to R.S. 30:80 et seq. Recovery of costs expended shall be in accordance with the statutes, rules, and regulations applicable to the source of funds.

Louisiana Revised Statutes 30:86, titled "Oilfield Site Restoration Fund,"

allows money from the fund to be used for oilfield site assessment or restoration

and also for costs associated with the response to an emergency. Specifically,

La.R.S. 30:86E(1), (5), and G, provide (emphasis added):

E. Except as otherwise provided in this Section, the monies in the fund may be disbursed and expended pursuant to the authority and direction of the secretary or assistant secretary for the following purposes and uses:

(1) Any oilfield site assessment or restoration conducted by the Department of Natural Resources pursuant to this Part, and the payment of the principal, interest, and legal fees, credit enhancement fees, trustee fees, and other related costs of issuance or ongoing expenses in connection with issuance of bonds or other debt obligations on behalf of the commission, at the direction of the secretary, pursuant to R.S. 30:83.1 for the purpose of financing the costs of such oilfield site assessments and restorations.

. . . .

(5) Any costs associated with response to any emergency as provided in R.S. 30:6.1 unless directed by the commission not to expend monies in the fund pursuant to Subsection G of this Section. The department shall seek to recover from the responsible party any monies disbursed and spent from the fund for any emergency as defined in R.S. 30:6.1 within six months of the initial expenditure for such emergency.

. . . .

G. Upon declaration of an emergency as defined in R.S. 30:6.1, the assistant secretary shall notify the commission of the declared

9

emergency. A meeting of the commission shall be held within ninety days after the emergency declaration. At such meeting, the commission may direct that no monies in the fund be disbursed or spent for response activity related to the emergency declaration.

Louisiana Revised Statutes 30:93 (emphasis added), titled "Recovery of site restoration costs; emergency costs," provides as follows:

A. If the assistant secretary undertakes restoration of an orphaned oilfield site under this Part or responds to any emergency as provided in R.S. 30:6.1, the secretary shall seek to recover all costs incurred by the secretary, assistant secretary, penalties, and other relief from any party who has operated or held a working interest in such site, or who is required by law, rules adopted by the department, or a valid order of the assistant secretary to control, clean up, close, or restore the oilfield sites or other facilities, structures, or pipelines under the commissioner's jurisdiction pursuant to R.S. 30:1 et seq. in accordance with the following:

(1) All oilfield sites for which there is no site-specific trust fund shall be restored with monies provided by the fund. Except for the responsible party, the secretary shall not be authorized to recover restoration costs from parties which formerly operated or held a working interest in an orphaned oilfield site unless restoration costs for a particular orphaned oilfield site including support facilities exceed two hundred fifty thousand dollars. Recovery of costs under this Paragraph shall be from the parties in inverse chronological order from the date on which the oilfield site was declared orphaned.

(2) For each oilfield site which becomes orphaned and for which a site-specific trust fund has been created and is fully funded under the provisions of R.S. 30:88(F), recovery of costs shall be against only the responsible party, and the site shall be restored in the following manner:

(a) Using funds in the site-specific trust fund established for the specific site.

(b) Using funds collected from any responsible party in such site where the site-specific trust fund is insufficient.

(c) If funds collected under Subparagraphs (a) and (b) of this Paragraph are insufficient to fully restore said orphaned oilfield site, the fund shall provide funds necessary to make up any deficiency.

10

(3) If the oilfield site does not meet the provisions of R.S. 30:88(F) and restoration costs exceed two hundred fifty thousand dollars, recovery of costs shall be from the parties in inverse chronological order from the date on which the oilfield site has been declared orphaned, except that a party shall be exempt from liability for restoration of an orphaned oilfield site as provided for in this Part in which said party had an operating or working interest if, and only if, the party complies with all of the following:

(a) The party makes full and reasonable timely contribution to the Oilfield Site Restoration Fund.

(b) The party creates a site-specific trust account for the restoration of the oilfield site and is in compliance with the terms and conditions of the site-specific trust account.

(c) The party makes full disclosure in compliance with R.S. 30:88(G) in the transfer of an oilfield site.

(d) The party complies in full with any penalty assessment which has become final under this Part for any violation under this Part.

(e) The party is not determined to be an individual, partnership, corporation, or other entity which is an operator or working interest owner in an oilfield site determined to be orphaned.

(f) The party is not determined to be a partnership, corporation, or other entity for which a general partner, an owner of more than twenty-five percent ownership interest, or a trustee has held a position of ownership or control in another partnership, corporation, or other entity which is an operator or working interest owner in an oilfield site determined to be orphaned.

(g) The party complies with all reviews of site-specific trust accounts as set forth in this Part, including additional contributions thereto if deemed necessary.

(4) For a response to any emergency as provided in R.S. 30:6.1, recovery of costs shall be against the responsible party.

B. The secretary may file suit in a court of competent jurisdiction in East Baton Rouge Parish to recover these costs. The secretary may settle or resolve any suits, disputes, or claims for any penalty under the provisions of this Part. Costs recovered under this Subsection shall be deposited into the Oilfield Site Restoration Fund.

The Louisiana Oilfield Site Restoration Law also provides a list of definitions in La.R.S. 30:82, wherein it defines a "Responsible party" as follows:

> (11) . . . the operator of record according to the office of conservation records, who last operated the property on which the oilfield site is located at the time the site is about to be abandoned, ceases operation, or becomes an unusable oilfield site, and that operator's partners and working interest owners of that oilfield site. A working interest owner is the owner of a mineral right who is under an obligation to share in the costs of drilling or producing a well on the oilfield site.

## DISCUSSION

The issue before this court is whether La.R.S. 30:93A(4) (recovery against the responsible party, i.e. the last operator/working interest owner), added by Acts 2019, No. 193, limits the Office of Conservation's ability to recover oilfield site restoration funds that were incurred in its efforts to control or plug and abandon the Lyon Well. The Office of Conservation argues that both Pioneer and Gary, being prior operators of the well, are on the hook for the restoration costs expended by the fund because the Lyon Well was orphaned and there was no site-specific trust fund ever established for the well.

Although we agree with the Office of Conservation's argument that for typical abandoned wells, La.R.S. 30:93A(1)-(3) provides for recovery from not only the "responsible party" but also prior operators and working interest owners, we find the clear and unambiguous language utilized by the legislature in La.R.S. 30:93A(4), 30:86E(5), and 30:86(G) creates a separate and distinct limitation as to recoupment of costs incurred pursuant to a response to any emergency as provided in La.R.S. 30:6.1. As previously stated, La.R.S. 30:93A(4) (emphasis added) provides "For a response to <u>any</u> emergency as provided in R.S. 30:6.1, recovery of costs <u>shall</u> be against the responsible party." "When a statute is clear and unambiguous and its application does not lead to absurd consequences, the

provision must be applied as written[] with no further interpretation made in search of the legislature's intent." *Bergeron v. Richardson*, 20-1409, p. 3 (La. 6/30/21), 320 So.3d 1109, 1111-12. As such, when the Office of Conservation declared an emergency as to the Lyon Well and paid Elm Springs, Inc. for its work with money from the Restoration Fund, it limited its recovery to the "responsible party," which, according to La.R.S. 30:82(11), is the last operator (Sandhill) and its working interest partners.

Pioneer and Gary introduced evidence in support of their motions for partial summary judgment proving that: (1) on September 5, 2019, the Commissioner of Conservation declared the Lyon Well an emergency pursuant to La.R.S. 30:6.1; (2) at the time the Lyon Well was declared an emergency, Sandhill was the operator of record; and (3) they were not, nor are they currently, working interest owners with Sandhill. Based on these undisputed facts, we find the trial court properly granted the partial summary judgments in favor of Pioneer and Gary.

For these reasons, we affirm the trial court judgment that granted Pioneer and Gary's motions for partial summary judgment and its order dismissing, with prejudice, all claims against them for recoupment of costs and expenses incurred in Office of Conservation's efforts to control or plug and abandon the Lyon Well. All costs of this appeal are assessed to Appellant, the Office of Conservation of the Louisiana Department of Natural Resources, appearing through the Commissioner of Conservation, Richard Ieyoub.

**AFFIRMED.**

13